Good morning, Your Honors. John Ballas on behalf of the appellant, William Townsend, and I do intend to reserve two minutes for rebuttal. William Townsend was denied his due process rights when the trial judge instructed the jury on a non-existent felony murder theory. Mr. Townsend was charged with first-degree murder. The jury was instructed on the elements of first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter, and they were properly instructed on the elements of those offenses. But after instructing the jury of those elements, the court improperly instructed the jury on a felony murder theory. In particular, it instructed the jury that if a person causes another's death while committing a felony which is dangerous to human life, the crime is murder. But there was no felony murder theory in this case, and it was an improper jury instruction, which I think everyone agrees. Counsel, is it your view that this is structural error? Well, I don't think it's my view that it's structural in that it's an automatic reversal by the error. I think that the Supreme Court's Hedgepeth decision, which was cited in my letter of supplemental authorities, makes it clear that the harmless standard is the general Brecht-Kotiakis standard of substantial and injurious effect or influence in determining the jury's verdict. But I think it meets that standard here. What about all the other instructions that indicated the different mens rea elements between manslaughter, murder second, and murder first? The court properly instructed on the elements of murder and also instructed on the elements of voluntary manslaughter, but then it threw in another theory of felony murder that was not applicable to this case. You cannot determine from the jury's instruction and the verdict which of the three instructions the jury rendered its verdict in finding Mr. Townsend guilty of second-degree murder. But didn't the conviction on second-degree murder mean that the jury must have found that he acted with malice? I mean, that was the instruction for second-degree murder. Or unless they follow the improper felony murder instruction, and because they just found that he caused a death during the connection of another felony, that it was murder. And if the jury followed that instruction and they're presumed to follow instructions and look at all the instructions as a whole, they may have improperly convicted Townsend without finding malice under that improper theory. Were they given an instruction to disregard any instructions which the facts don't ground? They were given a general instruction that if you find that the certain facts are not found and some instructions may not be applicable depending on how you find the facts. But that was a kind of a boilerplate instruction. It wasn't specifically tailored to the facts and instructions in this case. Let me ask you this. Was there any refresh my recollection? Did the prosecution zero in on the incorrect, allegedly incorrect felony murder instruction in its argument? No. Neither side argued a felony murder theory, but that... No. Was there an instruction on assault with a deadly weapon either? There was no instruction on assault with a deadly weapon. But there was an instruction on an allegation of the personal use of a deadly weapon. And then they defined that instruction in a way that describes essentially a general offense of assault. They defined personal use of a deadly or dangerous weapon as defendant must have intentionally displayed a weapon in a menacing manner or intentionally fired it or intentionally struck it or hit a human being with it. I think that those instructions... Was that bad instruction was in connection with what? That wasn't just by itself. It was an enhancement, an allegation that... Yeah. An enhancement. But they were also, the jury was instructed that they either find that allegation beyond a reasonable doubt, just like they are supposed to find any other crime. And the question is whether there's a reasonable likelihood that the jury misunderstood the instructions. I think in the context of this case, I think the answer has to be yes, because even though they were instructed on murder and voluntary manslaughter, they were then instructed on this improper felony murder theory. And the facts of the case were essentially that Mr. Townsend, after a scuffle between his girlfriend's son, left the house with a knife, and that his girlfriend's son, Mark Montgomery, came at him, and then he ended up stabbing Mr. Montgomery. So if the jury looks at that and looks at the instructions, and looks at the instructions of whether or not he personally used a dangerous weapon, a deadly weapon, and looks at the instructions of what the definition of personally using a deadly weapon is, it's essentially an assault type of a crime, and it's very similar to the instruction that was found in error that required habeas relief in Senega v. Bonnell, where they did specifically instruct on assault with a deadly weapon. Well, that's one of the big differences there. They did instruct, and also the attorney argued it. I don't think the attorney did argue it, if I remember right, in Senega. I think it was an improper instruction, but the discussion section starts off by saying that the prosecution never did rely upon a felony murder theory in this case. It did not argue that theory to the jury. It relied upon malice to support a conviction. So I think that's true both in Senega and in this case. There was no argument to the jury on whether that improper felony murder theory, but it doesn't make a difference. The court found that it was an error in Senega, even though there was no argument to the jury, and I think the court should find that as well here. Was there an objection to the instruction? No. I think I will leave my remaining time for rebuttal. Thank you. May it please the Court. Todd Marshall from the Sacramento AG's office on behalf of the answering party, Knowles. The instruction at issue comes from CALJIC 8.51, and this is an instruction that discusses the differences between murder and manslaughter under California law. There's a brief reference at the very beginning of that instruction that does refer to committing a felony which is dangerous to human life and the crime being murder. Typically, in an ADW or assault with a deadly weapon case that results in a murder, that particular sentence is supposed to be excised. That wasn't done here. However, that minimal failure does not amount to a Federal question in this case and, moreover, caused Mr. Townsend no possible harm. In the Senega case, as the Court found – Yes, sir. You make the argument this was harmless error. Yes, that the State court's rejection was neither an unreasonable application of the United States Supreme Court and, further, that if there is a Federal question here, under the Brex standard it was not a substantial and injurious to the jury's finding. There are a number of other instructions. It wasn't specifically that it was harmless error. I'm saying that, first, there's no Federal question. The State court's ruling that this was not a problem below was not contrary to the established United States Supreme Court authority, and, further, that if this Court does find a Federal question, Mr. Townsend wasn't harmed in any way by this brief reference based upon the other instructions that were given at trial. Specifically – Is the Supreme Court authority a clear, established Supreme Court authority upon which you rely? Well, I haven't found any authority discussing that there is an error in making this statement to a jury. So in the absence of controlling authority that this is an error, it can't be unreasonable for the Court to have rejected it below. You found no authority in the Supreme Court that an error in instruction to a jury can constitute – From this particular sentence, I did not. Oh, from this particular sentence, right? That's correct. If they had given the full panoply of felony murder instructions, it would have been State law error under Ireland, and I'm sure there is a case, a Federal case, that addresses that question. But this is not that case. This is not the case where all of the assault with a deadly weapon instructions were given. In fact, as no other felony murder reference or instruction was given, and, in fact, as the other instructions downplayed this particular sentence, and, moreover, the argument of counsel completely ignored it, and defense counsel must not have been very – There seems to be a difference between you and your opponent as to whether it was argued or not. The case was not argued – this sentence was not argued by either counsel in Townsend's case. Neither attorney made any reference to that during their argument. Did either counsel mention the felony murder rule? Not that I know of. The arguments are at R.T. 277 through 333, which is in the second tab of my supplemental excerpts, pages 1 through 57. And neither attorney made any such argument. Also, as the Court noted, the jury was – Counsel, you're speaking so rapidly, it's hard to follow you. I understand. All right. I had two procedural arguments that I had hoped to get to, and I can see now that I've used up three of my minutes on them. You're here now. Fair enough. The Court was told generally about the felony murder, but there was no second-degree felony murder instruction for CALJIC 8.32. Now, when you say that the Court was told generally about felony murder – The jury was, as in that sentence. Or in that sentence. I thought you were going back to the argument, and I thought you were being consistent, but I'm glad to clear that up. No, no. Townsend was never charged with assault with a deadly weapon. Assault with a deadly weapon was never defined for the jury, nor was any other crime defined for the jury besides murder or manslaughter. The jury was never told that assault with a deadly weapon or any other felony was possibly an inherently dangerous felony, so it would have been impossible for them to have taken the brief reference that was made and conclude that they could substitute that for a finding of malice. Did the jury send any questions to the judge? They did not. And, in fact, the jury was able to reject first-degree murder without asking for any clarification. It's usually a good idea to let the judge finish his question before you start answering it. Yes, sir. Because sometimes I might throw in a couple of words at the end, and then your answer will be nonresponsive or perhaps embarrassing. Go ahead. The jury did not ask for any clarification, and, in fact, they had no problem rejecting the first-degree murder charge and finding a secondary murder charge without asking for any such clarification. Also, the enhancement, as argued by opposing counsel, could not have been the basis for them to find the requisite inherently dangerous crime and, therefore, find felony murder because the jury was instructed that they could only reach the question of the knife use once they had found the defendant guilty of the crime of murder or manslaughter. So, as a result, they didn't reach the question of the enhancement until after they had concluded that he was guilty of second-degree murder. Why was that instruction given? The handle the enhancement second question? No. The one about felony murder. It's part of Calgic 8.51. It's an instruction that lays out the differences between manslaughter and murder, and at the very beginning of it it has a sentence that pertains only to felony murder, which should have been excised. Yeah. There's no oversight. Who offered that instruction? I suspect the prosecution, but I don't remember. Yeah, there seems no basis for offering that instruction at all. It just seems like a first confusion. The instruction itself is proper because the remainder of the instruction, after you get past the first sentence, lays out the differences between murder and manslaughter. The failure was to excise the first sentence. That's the only thing the Court did wrong. Turning now to my procedural argument based upon the Anti-Terrorism and Effective Death Penalty Act, I stand here before the Court more than 10 years after the verdict of guilt and the judgment and sentence in this case. In enacting the ADPA, Congress sought to address delays in the habeas process and protect society's interest in the finality of judgments. Here, the statute of limitations began to run after the direct appeal became final on January 16, 2001. Absent any tolling, the statute would run on January 16, 2002. Isn't this a classic case for equitable tolling? I mean, the Petitioner here relied on a Ninth Circuit holding, which was subsequently held legally erroneous by the Supreme Court. I mean, isn't that the very definition of equitable tolling? I have two responses for the Court. The first is, I don't think being incorrect about the law, misinterpreting the law, or, as I posit happened in this case, overlooking the law is the type of extraordinary circumstance that makes it impossible to file. And if we follow down this path, the exceptions would swallow the rule. And even more important, and back to my point of him overlooking the law, as his explanation for his delay in his State habeas filings, which is at page two of each document and the same in each of his three filings, the Superior Court, the Court of Appeal, and the California Supreme Court, he said, I quote, any delays were the result of Petitioner's lack of knowledge of the law. Well, but he was relying on a Ninth Circuit holding that was ultimately vacated in pace, wasn't he? I mean, he was relying on an express decision by this Court. That's the key factual question, is whether he was in fact actually relying on that authority. And if he says in his declaration, in his pleadings, I had a lack of knowledge of the law, that's the antithesis of I was relying on a particular law. Well, maybe he was inartful in stating it. But he, prior to the Supreme Court decision in pace, he would have been timely under the Ninth Circuit law. I posit that the Ninth Circuit law was incorrect. But in the district court, it was a controlling authority, Dictato II, I agree. But I'm still arguing that he said. It wasn't incorrect at the time, necessarily, until the Supreme Court opinion came out. Well, pace said the law has always been that a California state timeliness bar means that a matter is not properly filed. I acknowledge that Dictato II said a different thing. But pace has said that the law has always been the way it is now under pace, and that Dictato was incorrect in its interpretation. So I would posit that there's no showing here by Mr. Townsend that he actually relied on Dictato II, which is a requirement of Harris. The petitioner has to actually rely on the law that he's claiming was his impediment. Turning now to my position that the district court committed error in rejecting the Clark timeliness bar, I posit that the court did not handle the burden shifting analysis correctly. It, first of all, I posit shouldn't have found the burden shifted to me based upon the mere sighting of Saffold. And worse, the court leapt from the second part of Bennett all the way to a ruling without making a ruling that the burden had shifted and without affording me an opportunity to try to carry my ultimate burden. The court completely skipped over step three of Bennett in this case, leaping from his effort to shift the burden to me and jumping straight to ruling. Thereby, I had no opportunity to try to present the carrying of my ultimate burden under Clark. Time's expired. Thank you very much. I just want to make two points, Your Honors. One is in response to Judge Bia's question about what clearly established law is at issue in this case. I would refer the court to page 16 of my opening brief, and I think the clearest example is Mills v. Maryland, and the other cases cited there that state, if the jury's verdict must be set aside, if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict. And the only last point I want to make in rebuttal is I would ask the court to take a hard look at the uncertified issue here, and if the court thinks it's appropriate to ask the Attorney General to respond, I believe that it's actually as strong or stronger than the Senega issue in this case, because it's an error of state court law that the California Supreme Court has admitted is an error. It's Lascaux decision, and it improperly prevented the jury from considering Townsend's voluntary manslaughter instruction in defense, which was really the essence of this case. You know, there seems to be a difference of interpretation of the record between you and opposing counsel with regard to whether there was an argument made with regard to felony murder. There was no argument made by either the prosecution or the defense attorney in closing argument. I thought you said there was. No, there was no argument in our case, and there was no argument in the Senega case, both cases there was no argument made. Well, I thought in the Senega case there was. I don't believe so, Your Honor. Okay, I'll read it. Yes. Thank you, Your Honor. All right, thank you. All right, the case of Townsend v. Knowles will be submitted.
judges: Hug, Bea, Edmunds